

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer P. Rainey, President,
The University of Texas
Austin, Texas

Dear Dr. Rainey;            Opinion No. O-2288
                            Re: Availability for expendi-
                            ture of student fees for
                            support and maintenance
                            of the Texas Union and
                            related matters.

        We beg to acknowledge receipt of your letter
of June 14, 1940, requesting an opinion from this de-
partment, which letter is in part as follows:

        "On July 29, 1939, the Board of Regents
of the University of Texas passed the follow-
ing order, which appears in the minutes of
the Board of Regents, page 880, Vol. M.;

        "'THE TEXAS UNION BUDGET FOR 1939-40.--
Doctor Rainey presented the recommenda-
tions of the Board of Directors of the
Texas Union for the budget for 1939-40.
These recommendations included, first,
a compulsory fee of one dollar per Long
Session semester and fifty cents per
Summer Session term to be collected
from each student. This is in accord-
ance with the provisos of the Education-
al Appropriation Bill for the Biennium
of 1939-1941. The recommendations of
the Board of Directors included, second,
a detailed budget for 1939-40 amounting
to $29,994. It was estimated that the
compulsory fees would produce $24,290 on
the basis of the enrollment for the Long
Session of 1938-39 and the Summer Session
of 1938. Doctor Rainey stated that he

had not yet had sufficient time to study these recommendations to permit him to make recommendations on all of the items.

"'On motion of Doctor Morgan, seconded by Dr. Aynesworth, the Board voted to levy the fees as recommended by the Board of Directors of the Texas Union; i.e., one dollar per Long Session semester and fifty cents per Summer Session term, per student, effective at the beginning of the Long Session of 1939-40. On motion of Senator Blackert, seconded by Doctor Aynesworth, the Board then empowered President Rainey to approve and put into operation, after further study, a budget for the Texas Union for 1939-40.'

"As you know, the case of Homer P. Rainey, et al, v. James L. Malone, which is now pending in the Court of Civil Appeals, arose over the collection of this fee from Malone. Malone is the only student who has filed a suit of any kind in this connection, except for some who joined with Malone in his first suit, which was abated by the trial court. The fees were uniformly collected from all students for the first semester of the school year 1939-40, but all of them which have not been assigned to the Texas Union by the students, are still being held by the Auditor and have not been made available for expenditure by the University. None of the students paid under a formal protest, nor did any write 'protest' on their receipts.

"When registration for the second semester began, it had become pretty generally known among the students that the Attorney General was contending that the 'suspense statute' applied to fees collected from the University students. Evidently that caused some students who opposed paying these fees to write across their receipts, and the carbon copies now on file in our Auditor's Office, 'paid under protest.' There are perhaps a hundred of these.

"No suits have been filed for the re-
covery of the fees paid under protest, such
as are contemplated by the 'suspense statute',
Article 7057b, V. A. C. S.

"The Union Board is the governing body
established by order of the Board of Regents
to administer the affairs of the Texas Union.
That Board consists of five students, two ex-
students, and two faculty members. The or-
der of the Board of Regents providing for the
board and the administration of the Texas
Union is to be found in Volume I, pp. 320-321,
Regent's minutes, a certified copy of which
has been furnished you in connection with the
litigation now pending.

"The Board of Directors of the Texas
Union is now engaged in compiling its budget
to be submitted to the Board of Regents, in
compliance with the order of the Board just
referred to and subsection 19 of the current
appropriations bill. Although we have not re-
ceived a request from the Board of Directors
of the Texas Union that we turn over to them
the fees which have been collected, we antici-
pate that they may make such a request along
with the budget which they submit, based upon
the provisions of said subsection 19.

"In addition to the questions of policy
which are involved in the handling of the
fees which have been collected and the levy-
ing of the fees for the school year 1940-41,
it occurs to me that there may be some legal
questions involved. It seems that the fees
might be considered voluntary payments, which
the University would have no authority to re-
turn to the students even though the "fee"
might finally be held void by the appellate
courts. Therefore, I shall appreciate your
answer to the following questions:

"1. If the Board of Directors of the
Texas Union should call upon the Auditor of
the University of Texas to make available for
expenditure, under its control and subject to

its order, the fees which have been collected
and impounded by him for the first semester of
the school year 1939-40, would it be his duty
to do so?

"2. If the Board of Directors of the
Texas Union should call upon the Auditor to
make available for expenditure under its con-
trol and subject to its order, the fees which
have been collected and impounded by him for
the second semester, would it be his duty to
do so?

"3. If your answer to question No. 2 is
in the affirmative, should he include all of
the second semester fees and now held by him,
or should he retain those paid under protest,
even though no suit has been filed for their
recovery?

"4. In your opinion, does subsection 19
of the current appropriations bill require that
the Board of Regents levy a Texas Union fee, or
is it within the discretion of the Board of Re-
gents as to whether or not they levy same?"

The case of Homer Price Rainey et al vs. James
L. Malone, decided by our Court of Civil Appeals for the
Third Supreme Judicial District on May 15, 1940, involved
the validity of student fees account Texas Union, and
that court reversed the judgment of the trial court and
rendered the cause in favor of the appellant, upon the
ground that the payment and recovery of such fees came
within the scope of Article 7057b of Vernon's Revised
Civil Statutes.

Article 7057b insofar as is pertinent provides:

"Sec. 1. Any person, firm or corporation
who may be required to pay to the head of any
department of the State Government any occupa-
tion, gross receipt, franchise, license or
other privilege tax or fee, and who believes
or contends that the same is unlawful and that
such public official is not lawfully entitled
to demand or collect the same shall, neverthe-

loss, be required to pay such amount as such
public official charged with the collection
thereof may deem to be due the State, and
shall be entitled to accompany such payment
with a written protest, setting out fully
and in detail each and every ground or reason
why it is contended that such demand is unlaw-
ful or unauthorized.

"Sec. 2. Upon the payment of such taxes
or fees, accompanied by such written protest,
the taxpayer shall have ninety (90) days from
said date within which to file suit for the
recovery thereof in any court of competent
jurisdiction in Travis County, Texas, and
none other. Such suit shall be brought
against the public official charged with the
duty of collecting such tax or fees, the
State Treasurer and the Attorney General.
The issues to be determined in such suit
shall be only those arising out of the
grounds or reasons set forth in such written
protest as originally filed. The right of
appeal shall exist as in other cases provided
by law. Provided, however, where a class
action is brought by any taxpayer all other
taxpayers belonging to the class and repre-
sented in such class action who have properly
protested as herein provided shall not be re-
quired to file separate suits but shall be en-
titled to and governed by the decision render-
ed in such class action.

"Sec. 3. It shall be the duty of such
public official to transmit daily to the State
Treasurer all money so received, with a de-
tailed list of all those remitting same, and
he shall inform the State Treasurer in writing
that such money was paid under protest as
hereinabove provided. A deposit receipt shall
be issued by the Comptroller for the daily to-
tal of such remittances from each department;
and the cashier of the Treasury Department
shall keep a cash book to be called 'Suspense
Cash Book,' in which to  enter such deposit
receipts. Upon the receipt of such money by
the State Treasurer it shall be his duty and

he is hereby required to immediately and forthwith place the same in State depositories bearing interest in the same manner as any other funds of the State required to be placed in such depositories at interest, and the State Treasurer shall further be required to allocate whatever interest is earned on such funds and to credit the amount thereof to such suspense account until the status of such money is finally determined as herein provided.

"Sec. 4. If suit is not brought within the time and within the manner herein provided, or in the event it finally be determined in such suit that the sum of money so paid or any portion thereof, together with the pro rata interest earned thereon, belong to the State, then and in that event it shall be the duty of the State Treasurer to transfer such money from the suspense account to the proper fund of the State by placing the portion thereof belonging to the State in such fund by the issuance of a deposit warrant. When such deposit warrant or warrants are issued, they shall be entered in the cash book, and the proper fund to which such money is so transferred shall be properly credited therewith. In the event, however, that suit is brought by such taxpayer within the time and within the manner hereinabove provided, and it be finally determined that such money so paid by such taxpayer, or any part thereof, was unlawfully demanded by such public official and that the same belongs to such taxpayer, then and in that event it shall be the duty of the State Treasurer to refund such amount, together with the pro rata interest earned thereon, to such taxpayer by the issuance of a refund warrant, the same to be issued in separate series and to be used for making such refunds, to be styled and designated 'Tax Refund Warrants' and such warrants shall be written and signed by the Comptroller and countersigned by the State Treasurer and charged against the suspense account, as hereinabove provided, and shall then be returned to the Comptroller and delivered by him to the persons entitled to receive the same."

It will be seen the statute requires one paying such fees under protest to do so in writing, "setting out fully and in detail each and every ground or reason why it is contended that such demand is unlawful or unauthorized", (Sec. 1) and "the issues to be determined in such suit (to recover) shall be only those arising out of the grounds or reasons set forth in such written protest as originally filed." (Sec. 2)

It will further be seen that in any event the taxpayer shall have ninety days from the date of payment within which to file suit for the recovery of such payment. (Sec. 2)

The writing by the student paying such fees upon the receipt and the carbon copies of the words "Paid under protest" could not in any event be construed to be even a substantial compliance with the statute immediately above quoted, requiring the statement of the grounds of illegality and lack of authority affecting the collection of the fee. So that, all such fees heretofore collected from students under the circumstances stated by you should be dealt with in the usual course without regard to such endorsement upon the receipts, and as though no protest whatever had been made. In other words, it will be the duty of the University Auditor, upon request of the Texas Union Board, to make available all such fees collected for 1939-1940. This, we believe, answers your questions 1, 2 and 3.

Subsection (19) of the general provisions of House Bill No. 288, the Appropriation Bill for Institutions of Higher Learning for the current biennium, is as follows:

"The Board of Regents of the University of Texas is hereby authorized to levy a compulsory student fee not to exceed One Dollar ($1) per student for each semester of the Long Session and not to exceed Fifty Cents (50¢) per student for each term of the Summer Session, or any fractional part thereof as may in their discretion be just and necessary, for the sole purpose of operating, maintaining and improving the Texas Union; provided, however, that the amount of this fee may be changed at any time by the Board

of Regents within the limits hereinbefore fixed in order that sufficient funds to support the Union may be raised and yet insuring that no surplus, other than the customary reserves, shall ever be accumulated.

"The Auditor of The University of Texas is hereby directed to collect the fees provided for above and shall credit the money received from the said fees to an account to be known as the Student Union Fee Account; provided, however, that said money shall be used exclusively for the purpose of operating, maintaining and improving the Texas Union and shall be placed under the control and subject to the order of the Board of Directors of the Texas Union.

"The Board of Directors of the Texas Union shall annually submit a complete and itemized budget to the Board of Regents of The University of Texas, said budget to be accompanied by a full and complete report of all activities conducted during the past year and all expenditures made incident thereto. The Board of Regents shall make such changes in the budget as it deems necessary before approving same, and shall then levy the student fees under the provisions of this Section in such amount as will be sufficient to meet the budgetary needs of the Union within the statutory limits herein fixed."

We are of the opinion the authority of the Board of Regents to levy a compulsory student fee known as the "Student Union Fee," is permissive or discretionary with the Board and not compulsory, or mandatory.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR APPROVED JUN 27, 1940

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY BWT
CHAIRMAN